FILED
SUPERIOR COURT
OF GUAM

2023 NOV 16 PM 5: 24

CLERK OF COURT

BY:

# IN THE SUPERIOR COURT OF GUAM

| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. **CF0702-22** |
|---|---|---|
| | ) | GPD Report No.: 22-30362 |
| | ) | |
| vs. | ) | |
| | ) | DECISION AND ORDER RE. |
| | ) | DEFENDANT'S MOTION FOR |
| | ) | SECOND FORENSIC EVALUATION |
| **KYLE RICHARD MURRAY,** | ) | |
| DOB: 10/04/1996 | ) | |
| | ) | |

## INTRODUCTION

This matter came before the Honorable Judge Maria T. Cenzon on August 18, 2023 for a hearing on the Defendant's Motion for Second Forensic Evaluation (the "Motion"). Kyle Richard Murray ("Defendant") was present with counsel Assistant Public Defender Peter Sablan and Assistant Attorney General Grant Olan represented the People of Guam. Following testimony by Dr. Juan Rapadas, Ph.D. ("Dr. Rapadas") and argument by the parties, the Court took the matter under advisement pursuant to CVR 7.1(e)(6)(D) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM and Administrative Rule Nos. 06-001. After considering the pleadings on file, oral argument by both parties, and after reviewing the applicable statutes and case law, the Court now issues this Decision and Order GRANTING, *in part,* and DENYING, *in part,* the Defendant's Motion for Second Forensic Evaluation.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 1 of 18

## FACTUAL & PROCEDURAL BACKGROUND

The Defendant is charged with the following offenses: 1) Aggravated Assault (As a Third Degree Felony) with a Special Allegation: Use of A Deadly Weapon In The Commission Of A Felony and 2) Family Violence (2 Counts) (As Third Degree Felonies). *See* Indictment, Dec. 1, 2022. The charges stem from an incident during which Defendant allegedly punched and stabbed his father Robert Murray and punched and attempted to gouge out the eyes of his mother Kim Murray. *See* Decl. to Magistrate's Compl (Nov. 27, 2022).

### I. The Forensic Evaluation: Dr. Rapadas's Observations of Defendant.

On December 2, 2022, Defendant pleaded not guilty by reason of mental disease or defect and the magistrate ordered a forensic evaluation of the Defendant. *See* Notice of Plea of Not Guilty and Not Guilty By Reason of Mental Illness Disease or Defect (Dec. 2, 2022); Order for Forensic Evaluation (Dec. 6, 2022). The matters considered in the Forensic Evaluation included:

1. An opinion as to the defendant's competency to be proceeded against, together with the reasons and basis for the opinion.

2. An opinion as to the defendant's competency to be sentenced, together with the reasons and basis for the opinion.

3. An opinion as to whether or not the defendant was suffering from any mental illness, disease or defect at the time of the conduct alleged to have constituted the offense charged against the defendant and whether, as a result thereof, he lacked substantial capacity to know or understand what he was doing; or to know or understand that his conduct was wrongful or to control hi actions; or to the extent to which, as a consequence of mental illness, disease, or defect, the defendant did or did not have a state of mind relevant to any issue in the trial of this action.

Forensic Eval. at 1.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page **2** of **18**

Defendant was seen at the Client Services and Family Counseling (CSFC) offices on January 4, 2023. *Id.* at 2. The exam included a comprehensive forensic exam and interview, MMSE (mini-mental status exam) and a review of Defendant's court and records on file with Guam Behavioral Health and Wellness Center (GBHWC). *Id.* Prior to the start of the examination, he was informed about the non-confidential nature of the evaluation, that it was conducted not for the purpose of treatment, and Dr. Rapadas noted, "Mr. Murray appeared to have an understanding of the above facts about his forensic evaluation. He gave his assent to continue the exam and signed the disclosure form." *Id.* The evaluation lasted approximately one hour and thirty (30) minutes. *Id.*

## A. Defendant's Self-Reported Mental Health and Employment History

Defendant reported to have a history of diagnosed depression for which he was prescribed an anti-depressant. *Id.* at 3. He also self-reported a history of alcohol consumption resulting in a DUI while in high school in Cuba, a charge for underage drinking while living in Georgia, and arrests for alcohol-related offenses while living in North Carolina. *Id.* Despite his struggles with alcohol and depression, Defendant served for one and a half years as a Federal Firefighter and was stationed in Norfolk, Virginia. *Id.* at 4. However, he indicated that during his service he was placed on medication to address his chronic depression and anxiety, and after deciding on his own to cease taking the prescribed medications, he was later was arrested for methamphetamine use and terminated as a fire fighter. *Id.* During this time, he admitted to "drinking a lot" and reported being incarcerated in Virginia for the meth charge and after his release eventually moved to Guam. *Id.* at 4. After moving to Guam, he was gainfully employed in a job he enjoyed and was

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 3 of 18

about to start his studies in Civil Engineering at the University of Guam; but was arrested in September 2022 for a DUI. *Id.*[1]

## B. Defendant's Record of Services at GBHWC.

Defendant has received services from GBHWC in the past and in the course of his evaluation, Dr. Rapadas reviewed records of his treatment from October 18, 2021, through November 29, 2022. *Id.* Defendant was noted to have undergone a drug and alcohol assessment through GBHWC in 2021 during which "he tested negative on depression and anxiety questionnaire. His provisional diagnosis was Methamphetamine use disorder and he was referred for Drug and Alcohol assessment and treatment." *Id.* However, Defendant's case was closed without services "because there was no current phone number." *Id.* at 5. Defendant indicated to Dr. Rapadas that "[h]e feels he has been misdiagnosed. He thinks he may be more bipolar than having major depression because he has extreme and sudden mood shifts throughout his life." *Id.*

Dr. Rapadas noted that "[a]t this current forensic exam, Kyle did not report any active hallucinations or delusions. He did report having suicidal ideation over the past few years as he has felt depressed and anxious for the longest time and he had sought treatment and participated in treatment for years. . . .. **His mental illness was more mood-related disorders and not psychosis related.**" *Id.* at 5 (emphasis added).

//

//

[1] The Court shall take judicial notice of another case involving Defendant, CM0318-22, in which Defendant has been charged with Driving While Impaired (As a Misdemeanor) and Driving While Impaired (B.A.C.)(As a Misdemeanor) currently in pre-trial status before the Honorable Judge Vernon P. Perez.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page **4** of **18**

### C. Dr. Rapadas's Observations of Defendant During Assessment.

During his mental status exam, Dr. Rapadas noted the following observations which the Court finds relevant to this Motion:[2]

1. *Orientation and Memory.* Defendant "was oriented to place, time, person, situation, and object. He could articulate why he was here for a court-ordered forensic evaluation. His attention and concentration during the assessment were good. He remembered some details of his recent and remote past. During the assessment, his eye contact was good. Both his short-term and long-term memory appeared to be fair at this time. He did appear to be a reliable historian for whatever he shared.

2. *Mood and Affect.* Defendant's seemed anxious and somewhat emotional when speaking about the case. He seemed very concerned about this evaluation and the possible consequences of this evaluation. His affect was mood appropriate.

3. *Speech and Thought.* His speech flow was good. Speech content was appropriate to situation. For Mr. Murray, it did appear that he completely and fully understood the questions that were asked. His thought content was appropriate to mood and circumstances and never bizarre or psychotic. His thought organization seemed good as he always focused on the query.

4. *Fund of Knowledge, Judgment, Insight and Skills.* His fund of general knowledge was estimated to be average at best based on his reported educational, occupational, and academic history. His judgment, clinical insight, and coping skills range from fair to good at best as he has reported that he had stretches of time when he worked with others, worked full-time, maintained viable and stable relationships, and handled his financial obligations well. It does appear that he wants to be generally assertive regarding self-advocacy at this time and he wants to resolve all of his legal troubles. Before this new case, all of his previous cases were either closed or if open, he was taking care of them.

Dr. Rapadas also administered the MMSE which is "used by clinicians to check for the examinee's basic orientation, short term recall, attention, and command of the language. His MMSE score today was 30 out of 30, **which is a perfect score.**" *Id.* at 6 (emphasis added).

---

[2] Forensic Evaluation at p. 5-6.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 5 of 18

Moreover, Dr. Rapadas opined that "[a]t this forensic exam, Mr. Murray had no evidence of any major cognitive or neurological or executive functioning impairment at this time. He was oriented, had good cognitive registration attention, language skills, and good recall." *Id.*

### D. Dr. Rapadas's Opinions Following Examination

In his resulting Forensic Evaluation Report, Dr. Rapadas concluded that Defendant is currently competent to be proceeded against and to be sentenced:[3]

> Taken all data in total, in my opinion, Mr. Murray is <u>currently competent</u> to be proceeded against and to be sentenced. At the assessment session Mr. Murray was very willing to talk openly in English. He understood the specific purposes of the forensic evaluation.

> He presented as oriented in all spheres, lucid, and rational. He had a good mental status clinical presentation. Mr. Murray is able to grasp the legal concepts and terms, understands his charges, and wants to work with his attorney. He said his attorney was Peter Sablan. He was unsure who his judge was and when his next hearing was, but he knew it was soon. It is tomorrow at 9 am with Judge Cenzon.

> He knew the difference between a misdemeanor and a felony. He knows why he was arrested and he understood the charges. He was forthcoming about sharing about what he could recall about the incident. He would take the legal process seriously.

Dr. Rapadas further found that the Defendant "<u>did not lack substantial capacity</u> to know or understand what he was doing, to control his actions, and to know or understand that his conduct was wrongful." *Id.* at 9 (emphasis in original). However, the Forensic Evaluation notes that Defendant "may have had a <u>diminished capacity</u> in his mental state that contributed in some way to the incident that night with his father." *Id.* In reaching this conclusion, Dr. Rapadas noted

---

[3] Forensic Eval. at 7 (emphasis in original).

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 6 of 18

that Defendant described the events of the evening, as he recalled them, but that he claims to have no recollection of the events leading to his arrest and that he "blacked out" until he recalls being arrested. *Id.* at 8. According to the Forensic Evaluation report,

> It appears that the alcohol use and subsequent black out played a significant role in how the evening played out. In my opinion, having his untreated mental illness of bipolar disorder and anxiety disorder did not result in Kyle stabbing his father. Having the mental illnesses can cause someone to turn to illegal drugs and alcohol to self-medicate, which can then exacerbate a person's mental illness symptoms (e.g., hallucinate more, be more suicidal, or more violent). In Kyle's situation, he had a good day at work and settled down at home with a pizza and some beer. He had greeted his parents before they left for a party and then for some unknown reason, he attacked his father.
>
> Kyle did not offer a motive and there does not appear to be a motive offered by his parents
>
> In the past, Kyle has drunk alcohol before and has blacked out in the past before too, but nothing like this has happened to him of this magnitude.
>
> So, in my opinion, it appears that as a result of his mental illness as mentioned in the Guam statue, Mr. Murray did not lack substantial capacity to know or understand what he was doing, to control his actions, and to know or understand that his conduct was wrongful. Although I would concede that for these three conditions, he offered no explanation for his violent conduct, but the conduct occurred, seemingly without motive or premeditation, despite his mental illness.[4]

### E.    Defendant's Motion for a Second Forensic Evaluation

On January 20, 2023, during a further proceedings hearing on the Forensic Evaluation, the Defendant's counsel orally requested the Court grant a second evaluation on the basis that defense counsel disagreed with the finding that Defendant did not lack substantial capacity at the time of the incident. Hearing Minutes at 09:45:58 AM to 9:46:42 AM (Jan. 20, 2023). The Court

---

[4] Forensic Evaluation at 9.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 7 of 18

mandated that the request be made in writing pursuant to Criminal Procedure Rule CR 1.1(b) of the Local Rules of the Superior Court of Guam and subsequently both parties filed memoranda with points and authorities in support and in opposition to the request. See Mot. for Second Forensic Eval. (Feb. 1, 2023); People's Opp, to Def.'s Mot. for Second Forensic Eval. (Feb. 15, 2023).

Defendant's request is for a second evaluation with *another* forensic expert to examine the defendant and to report upon his mental condition under § 7.25(b) on the basis that "Mr. Murray does not seem to remember the incident that is alleged to have occurred on November 25, 2022." *Mot.* at 3. Moreover, counsel for the Defendant urges that although the Defendant may seem to understand the nature of the proceedings, "…because [of] his mental disorder, he may be unable to assist and cooperate with counsel, because of the reported "black out." *Id.*

The People oppose the Motion, arguing that "Dr. Rapadas's evaluation satisfies the 9 GCA § 7.25 requirements, and Defense Counsel can obtain further clarification regarding substantial capacity and the 'black out' period by questioning Dr. Rapadas rather than obtaining another evaluation." *See* People's Opposition to Defendant's Motion for Second Forensic Evaluation, Feb. 15, 2023.

During the hearing on Defendant's Motion, defense counsel engaged in the following query of Dr. Rapadas during his direct examination on the issue of whether Defendant lacked substantial capacity at the time of the alleged incident:[5]

---

[5] Competency Hearing of 08/18/2023 at 9:48:54 AM to 9:53:54 AM (8/18/23).

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page **8** of **18**

SABLAN: So, Dr. Rapadas, you indicated that uh my client...told you that he blacked out during the events?

RAPADAS: Yes.

SABLAN: Would you consider that an inability of him to assist in his defense because he doesn't remember or recall the events that occurred that they are alleging?

RAPADAS: uh, yeah., when someone tells me they black out, I just...I can't... I wasn't there to see if he blacked out. So when someone reports it, I don't usually take it that it as... that it's true or not coz I can't confirm it

SABLAN: And you're aware that he's been suffering from some type of mental illness since he was in his teens?

RAPADAS: That's correct.

SABLAN: And that he suffers from some type of bipolar disorder?

RAPADAS: Yes.

SABLAN:: And...how did you come to the conclusion in your report that he did not lack the substantial capacity when he's indicated ... that he blacked out and he doesn't know what happened?

RAPADAS: Ok, so are we assuming he's competent, then? [Be]cause from there I can go into the NGR...NGRI.

SABLAN: Well, I don't want to make that assumption because we are still making the argument that he's not competent at this point, but if we can make an alter[native] argument that...if the court does find him competent – right? –

RAPADAS: Ok....

SABLAN: legally competent ... then how is the ... can you answer that question?

RAPADAS: Ok, so it's "how could he have not substantial capacity if he says he blacked out?" That's the question.

SABLAN: Yeah. Where did you get that information and how did you come to that conclusion?

RAPADAS: OK. So the reason that I spelled out here was the... what I try and do is ... try and get some information before the incident and after the incident and anything in-between. It is often that the defendant either has no memory, blacks out, or says they black out and/or they have totally different recollections of what's written in the police report or whatever witness es said. So that's not uncommon for him to say he blacked out. Because that's ... that happens. Or they say, "I have no memory of it, Dr. Rapadas." So, I don't... if he has any history of black outs – let's say because of alcohol – then I put that in consideration, because that happens as well.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 9 of 18

People who drink a lot of alcohol report they do black out. So, my position in this, since I can't really confirm that he blacked out because I'm not there and it's hard to say when someone blacked out several months ago, is I'm not evidence, so I can't BE evidence. Just basically, that's what *he* said. So, I try and make an inference on information ... that police observed that [inaudible] observed and stuff that he told me before he blacked out. So, in this case he said he was having a good day, he ordered pizza and he was just relaxing and then he blacks out. And I think that's where he talked about drinking lots of alcohol.

**Now in the past he had told me that he has blacked out when he drinks a lot of alcohol. And I've mentioned that often times people with mental illnesses, instead of using their medicine, they use alcohol or drugs as a self-medication.**

**So, I think that was the case in this case, that he was given medication but chose to use alcohol as a self-medication. And because he had an experience of blacking out – he's actually had several, I think he had a DUI, maybe, before – so there was a history of him over-drinking, so that he KNEW that he was drinking. That, to me, that doesn't mean that he lacks substantial capacity. He knew he was drinking, he chose to drink and relax, have a pizza; and my inference was, I don't think he lacked substantial capacity that day.**

...

**My job is to figure out [Defendant's] mental state [or] at least infer a mental state, have an opinion about it. My opinion is that, you know, prior to this, he's working, he's a civil engineering student, so here's someone who, despite having mental illness, is still able to function. And that this could have happened probably because of too much alcohol, which he knew that sometimes he blacks out.**

**So up until that time *and after*, he didn't lack substantial capacity.**[6]

---

[6] Id. (Emphasis added).

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 10 of 18

Dr. Rapadas did, however, opine that the Defendant may have been suffering from a "diminished capacity":[7]

> RAPADAS: Now, I put "diminished capacity" *only because* that there is a history of mental illness, but not to the point where, like, say someone had some unreal experience of hallucinations that his father was a devil or anything like that – which is common in the forensic realm, to find NGRI where people have schizophrenia, psychosis and maybe brain damage. But in this case, it's a mood disorder that is severe; but, in my opinion, the severe mood disorder contributed to alcohol use, not taking his medication, and making poor choices and that his capacity may have been diminished at the time even though he said he blacked out. I don't have any other explanation for it because I wasn't there and there was no video showing his black out state.

Later, defense counsel asked Dr. Rapadas how certain he was that Defendant's mental state did not play "a big part" in the crime he is accused of committing. In response, Dr. Rapadas reiterated that his opinion is that Defendant was "capable of choosing" and did choose to self-medicate with alcohol rather than his prescribed medication, and he knew that drinking alcohol could lead him to black out:

> I believe alcohol, in the past especially, was [Defendant's] choice of medication. And so, people can tend to over drink and things happen. I'm just assuming that because alcohol can cause blackouts [and] because I don't think he has a history of seizure disorder, alcohol can cause blackouts. So that's my assumption. That's as far as I can go because he was not taking his mood disorder medicine. It's a choice that people make, but it's not prudent, obviously, and not clinically appropriate.[8]

Notwithstanding this opinion, defense counsel inquired whether, if Defendant did suffer from a seizure disorder – of which there has been no indication on the record of this matter – if that would make any difference and Dr. Rapadas agreed that seizure disorder – among a multitude of other

---

[7] Id. at 9:54:00 AM to 9:55:20 AM.
[8] Id. at 9:56:30 AM to 9:57:11 AM.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 11 of 18

reasons, including drinking alcohol, taking illicit drugs, and even "falling down" – could cause a person to black out. Dr. Rapadas concluded that the Defendant had the capacity to make the choices that ultimately resulted in the black out state which he assumed, on the representation of the Defendant, did, in fact, occur. *Id.* at 10:00:05 AM to 10:00:19 AM.

During examination by the People, Dr. Rapadas testified that despite Defendant's long-term mental illness diagnoses, there was no prior recorded incidence of violent behavior other than on the night alleged in the Indictment. The inference, therefor, is that the Defendant's diagnosed mental illness alone was not the cause of his behavior or black out on the night of the alleged incident, but his choice to consume the alcohol which he knew could lead to a black out.[9]

## LEGAL ANALYSIS

Defendant challenges Dr. Rapadas's conclusions in the Forensic Evaluation that (1) Defendant is competent to be proceeded against and to be sentenced and (2) that the Defendant did not lack substantial capacity to know or understand what he was doing, to control his actions and to know or understand that his conduct was wrongful. He seeks a "second forensic evaluation to assist the Court in making a determination of Mr. Murray's competency to stand trial and be proceeded against and whether or not he was suffering from any mental illness, disease or defect at the time of the alleged conduct and whether he lacked substantial capacity to know or understand what he was doing; or to know or understand that his conduct was wrongful or to control his actions; or the extent to which as a consequence of mental illness, disease or defect,

---

[9] Id. at 10:04:42 AM to 10:05:15 AM. Defendant indicated to Dr. Rapadas during his evaluation that he believes he consumed 11 beers.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 12 of 18

he did or did not have a state of mind or the capacity to have a state of mind relevant to any issue at trial." Mot. at 1. Defendant also seeks an order of the court for *"another* forensic expert to examine of [sic] Mr. Murray and report on his mental condition" and to determine whether, because of his mental disorder and reported "black out" during the alleged incident, he is unable to assist and cooperate with counsel in his defense. Mot. at 3 (emphasis added).

It is unclear to the Court whether Defendant seeks merely a second forensic evaluation by someone other than Dr. Rapadas, or if he is seeking an order of the Court to employ an independent expert witness to assist in his defense. However, based upon the pleadings on file with the Court in this matter and the oral argument during the competency hearing, the Court interprets the instant Motion as seeking a second opinion, and not an expert witness, under the Court's discretionary authority pursuant to 9 GCA § 7.25.[10]

### A. The Court finds that Defendant is competent to stand trial and denies the Motion for a second evaluation on the question of competency.

As a preliminary matter, once a Defendant places his or her mental state at issue, the provisions of 9 GCA § 7.25 dictate the process by which competency to be proceeded against and to be sentenced as well as whether the Defendant lacked the substantial capacity, *inter alia,* to understand the wrongfulness of or to control his actions. 9 GCA § 7.25 provides in relevant part:

> (a) Whenever a plea of not guilty by reason of mental illness, disease or defect is entered or a notice is given under § 7.22, the court shall appoint at least one qualified psychiatrist or other qualified person (hereinafter referred to as psychiatrist) to examine the defendant and to report upon his mental condition.

---

[10] *Cf. People of Guam vs. Akmal Khozhiev,* Criminal Case No. CF0566-21, Decision and Order Granting Def.'s Motion for Independent Psychiatrist and Confidential Evaluation (Jun. 30, 2022). In the instant case, although Defendant indicates that his mental state will be a significant factor at trial, he has not satisfied the requirements for establishing the need for an independent expert to assist in presenting a complete defense. See *Khozhiev; People v. Callahan,*

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 13 of 18

(b) Whenever, in the opinion of the court, any other expert evidence concerning the defendant's mental condition is, or will be required by the court or either party, the court shall appoint one or more such experts to examine the defendant and to report upon his mental condition as the court may direct.

(c) In addition to the expert witness appointed by the court, either party in a criminal action may retain other psychiatrists or other experts to examine the defendant and to report upon his mental condition. Experts retained pursuant to this Section shall be permitted to have reasonable access to the defendant for the purposes of examination and the giving of testimony.

\* \* \*

(f) Copies of any reports, records, documents or information furnished by either party to the psychiatrists appointed pursuant to this Section shall be given to the other party in the action. Any psychiatrist appointed pursuant to this Section, or retained by either party, shall have the right to inspect and make copies of reports and records relating to the defendant in any facility or institution in which they are located. Compliance with this Section may be required by an appropriate order of the court.

(g) Each psychiatrist appointed by the court who examines the defendant pursuant to this Section shall file a written report with the clerk of the court who shall deliver copies to each party. \*\*\*

9 G.C.A. § 7.25.

"A defendant is incompetent to be proceeded against in a criminal action if, as a result of mental illness...he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." See 9 GCA § 7.37(a)(1)-(4). An incompetent defendant may not be tried or convicted in a criminal proceedings, and this notion is "fundamental to an adversary system of justice, … [because] [c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 14 of 18

or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139-140 (1992)(Kennedy, J., concurring). Competency turns on whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S., at 402 (1960). Generally, the "[t]est for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *People v. Guerrero*, 2001 Guam 19, ¶ 33 (Aug. 16, 2001)(quoting *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir.1985)(internal citations omitted)).

The Court has considered the report of the Forensic Evaluation conducted by Dr. Rapadas, his sworn testimony during the Competency Hearing on this matter and the parties' argument on the record and finds that Dr. Rapadas's evaluation is sufficient under the circumstances to establish that the Defendant is currently competent to be proceeded against. Although the Defendant has a history of mental illness, despite this long-standing diagnoses, he has been able to complete his high school education, serve as a federal firefighter, enroll in (although not commence) studies in civil engineering and to be gainfully, successfully employed with potential for advancement in the company in which he was employed prior to his arrest in this case. The Court has painstakingly identified the portions of the record of the Competency Hearing which support its findings of competency.

Defendant argues that because he "blacked out" and does not remember or recall the acts of which he is being accused, this calls into question his lack of competency. The claim of having

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 15 of 18

"blacked out" while admitting to drinking alcohol, under the circumstances, is insufficient to dispute Dr. Rapadas's finding that he is currently competent to be proceeded against. See *Siah v. State,* 837 P.2d 485, 487 (Oklahoma Ct. Crim. App. 1992)(Defendant who claimed that his lifelong history of alcohol abuse and alcohol induced blackouts made him incompetent to stand trial because he "blacked out" and cannot remember the night's events was deemed competent based upon a finding that the defendant understood his constitutional rights, recognized the witnesses against him and could discuss his past relationship with them). As such, the Court shall DENY Defendant's Motion for a second evaluation with respect to his competency to be proceeded against in this case.

**B.      The Court finds that Defendant is entitled to a second forensic evaluation on the question of whether he lacked substantial capacity to understand the wrongfulness of his actions or to control his actions at the time of the alleged incident.**

The Defendant made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial and, despite Dr. Rapadas's opinion that Defendant did not lack substantial capacity, the oft-cited Supreme Court case of *Ake v. Oklahoma,* 105 S. Ct. 1087, 1096 (1985), supports granting his request for a second evaluation on this question. *Ake* at 1091-1092 ("when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one.").

Although the Court finds that this Constitutional mandate was satisfied with the appointment of a neutral and competent evaluator in Dr. Rapadas, certain matters which were raised during the hearing of the Motion compel the Court to grant the request on the question of

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 16 of 18

Defendant's mental state *at the time of the alleged offense*. Specifically, during the hearing, defense counsel raised questions of whether a seizure disorder might explain the "black out" or if records from any off-island treatment facility or service provider might affect Dr. Rapadas's opinions, suggesting to the Court that the Defendant may have grounds to support a defense of lack of substantial capacity. The Defendant further asserts that another expert's review would aid in the preparation of such a defense. Indeed, Dr. Rapadas opined that Defendant may have had a "diminished capacity" at the time of the alleged offense; therefore, the Court finds that Defendant is entitled to a second evaluation on this question.

Under the circumstances and despite the Court's finding the Defendant is competent to be proceeded against, 9 GCA § 7.25(b) gives the Court the discretion to appoint a second psychiatrist on the issue of Defendant's mental status at the time of the alleged offense. Therefore, the Court exercises its discretion and orders the Defendant undergo a second forensic evaluation and that Client Services and Family Counseling Division of this Court schedule a second evaluation by another neutral evaluator. As required under Section 7.25(b), each psychiatrist appointed by the court who examines the defendant pursuant to this Section shall file a written report with the clerk of court who shall deliver copies to each party.[11]

## CONCLUSION

For the above reasons, Defendant's Motion is **GRANTED, in part, and DENIED, in part**. Defendant's Motion for a second evaluation on the question of Defendant's competency to

---

[11] Because this second evaluation is not an independent mental health expert appointed as an expert witness, the provisions of Section 7.25(b) regarding disclosure of the second expert's witness to the People and the Defendant apply.

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page 17 of 18

be proceeded against is **DENIED**. Defendant's Motion for a second evaluation on the question of whether Defendant lacked substantial capacity based upon his claim that he "blacked out" is **GRANTED**.

SO ORDERED this **NOV 16 2023**.

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam

*People of Guam vs. Kyle Richard Murray*
Criminal Case No. CF0702-22
Decision and Order re. Defendant's Motion for Second Forensic Evaluation
Page **18** of **18**